**IN THE UNITED STATES DISTRICT COURT
FOR THE EASTERN DISTRICT OF ARKANSAS
JONESBORO DIVISION**

**KIMBERLY RENEE HONEYCUTT**                                              **PLAINTIFF**

**No. 3:12-CV-185-BD**

**CAROLYN W. COLVIN, Acting Commissioner,**                    **DEFENDANT**
**Social Security Administration**

**ORDER AFFIRMING THE COMMISSIONER**

Kimberly Renee Honeycutt seeks judicial review of the denial of her third

application[1] for disability insurance benefits.  She first alleged disability beginning

September 9, 2005[2] — at age 27 — but she worked full-time in February 2008.[3]  Her

attorney amended that date to February 1, 2008.[4]  At that time, Ms. Honeycutt was 29.

Ms. Honeycutt has a bachelor's degree in social work and a master's degree in

early childhood services.[5]  She works part-time as an implementer assisting adults with

---

[1]SSA record at p. 128-29 (prior applications denied on 12/29/1998 at age 20 and
3/15/2006 at age 26).

[2]*Id*. at p. 105.

[3]*Id*. at pp. 121, 133 & 174 (reporting full-time work as behavioral instructor from
Nov. 5, 2007 to Feb. 15, 2008).

[4]*Id*. at p. 39.

[5]*Id*. at p. 28.

developmental disabilities.[6]  She maintains tht she cannot work full-time due idopathic

neuropathy, lower back pain, neck pain, depression, and discoid lupus.[7]

     **The Commissioner's decision**.  After considering Ms. Honeycutt's application,

the Commissioner's ALJ determined Ms. Honeycutt had severe impairments —

neuropathy, neck/back pain, headaches, gastroesophageal reflux disease, and mood

disorder[8] — but she had the residual functional capacity ("RFC") to do a reduced range

of light work.[9]  Because a vocational expert identified jobs a person with Ms.

Honeycutt's RFC could do,[10] the ALJ concluded that Ms. Honeycutt was not disabled

under the Social Security Act and denied the application.[11]

---

[6]*Id*. at pp. 28-29 & 391.

[7]*Id*. at p. 132.

[8]*Id*. at p. 12.

[9]*Id*. at p. 14 (reducing light work by: (1) occasional climbing, balancing, stooping, bending, kneeling, or crawling; and (2) work where interpersonal contact is incidental to work performed, complexity of tasks is learned and performed by rote, a few variables, little judgment, and the supervision required is simple, direct and concrete).

[10]*Id*. at p. 44.

[11]*Id*. at pp. 19-20.

After the Commissioner's Appeals Council denied a request for review,[12] the ALJ's decision became a final decision for judicial review.[13]  Ms. Honeycutt filed this case to challenge the decision.  In reviewing the decision, the court must determine whether substantial evidence supports the decision and whether the ALJ made a legal error.[14]

**Severe impairments**.  Ms. Honeycutt maintains that the ALJ should have considered pain disorder and discoid lupus as severe impairments.[15]  At step two of the disability-determination process, the ALJ considers the medical severity of the claimant's impairments.[16]  Step two directs a conclusion of "non-disabled" if the

---

[12]*Id*. at p. 1.

[13]*See Anderson v. Sullivan*, 959 F.2d 690, 692 (8th Cir. 1992) (stating that "the Social Security Act precludes general federal subject matter jurisdiction until administrative remedies have been exhausted" and explaining that Commissioner's appeal procedure permits claimants to appeal only final decisions).

[14]*See* 42 U.S.C. § 405(g) (requiring district court to determine whether Commissioner's findings are supported by substantial evidence and whether Commissioner conformed with applicable regulations); *Slusser v. Astrue*, 557 F.3d 923, 925 (8th Cir. 2009) (stating that the court's "review of the Commissioner's denial of benefits is limited to whether the decision is 'supported by substantial evidence in the record as a whole'"); *Long v. Chater*, 108 F.3d 185, 187 (8th Cir. 1997) ("We will uphold the Commissioner's decision to deny an applicant disability benefits if the decision is not based on legal error and if there is substantial evidence in the record as a whole to support the conclusion that the claimant was not disabled.").

[15]Docket entry # 14, pp. 25-26.

[16]20 C.F.R. 404.1520(a)(4)(ii).

claimant fails to prove a severe impairment.  One purpose of step two is to weed out claimants whose abilities to work are not significantly limited.[17]  If the claimant meets her step-two burden, there can be no reversible error if the record shows that the ALJ considered all of the medical evidence and all of the claimant's impairments.  Ms. Honeycutt met her burden to show a severe impairment, so her application proceeded to step three.  The record shows the ALJ considered all of the medical evidence and all of Ms. Honeycutt's impairments.  The ALJ identified symptoms of pain disorder — neuropathy, neck pain, back pain, and deression — as severe impairments,[18] and discussed the medical evidence about discoid lupus and pain disorder.[19]  Ms. Honeycutt showed no error.

**Credibility**.  Ms. Honeycutt also complains about the evaluation of her credibility.  She alleged that disabling pain prevented her from working.  She maintains

---

[17]*Bowen v. Yuckert*, 482 U.S. 137, 156-57 (1987) (O'Connor, J., concurring) (explaining that Social Security Act authorizes Commissioner to weed out applications by claimants who cannot possibly meet statutory definition of disability at step two of disability-determination process).

[18]SSA record at p. 12.

[19]*Id*. at p. 16.

the psychological examiner's diagnosis of pain disorder associated with psychological

factors[20] supports her allegation.[21]

An ALJ has a duty to evaluate the claimant's credibility.[22]  To evaluate Ms.

Honeycutt's credibility, the ALJ followed the required two-step process[23] and

considered the required factors.[24]  Thus, the question before the court is whether

substantial evidence supported the ALJ's credibility evaluation.

"The ALJ may discount complaints of pain if they are inconsistent with the

evidence as a whole."[25]  Here the ALJ determined the medical findings were

---

[20]*Id*. at p. 464 (diagnosing pain disorder associated with psychological factors).

[21]Docket entry # 14, pp. 22-25.

[22]*Nelson v. Sullivan*, 966 F.2d 363, 366 (8th Cir. 1992).

[23]*See Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*, SSR 96-7p.

[24]In considering the credibility a claimant's subjective complaints, an ALJ must consider: (1) the claimant's prior work record; (2) observations by third parties and treating and examining physicians relating to such matters as: (a) the claimant's daily activities; (b) the duration, frequency and intensity of the pain; (c) precipitating and aggravating factors; (d) dosage, effectiveness and side effects of medication; and (e) functional restrictions.  *Polaski v. Heckler*, 739 F.2d 1320, 1322 (8th Cir. 1984).  *See* SSR 96-7p, *Pol'y Interpretation Ruling Titles II & XVI: Evaluation of Symptoms in Disability Claims: Assessing the Credibility of an Individual's Statements*.

[25]*Dunahoo v. Apfel*, 241 F.3d 1033, 1038 (8th Cir. 2001).  *Ostronski v. Chater*, 94 F.3d 413, 418 (8th Cir. 1996) ("An ALJ may discount a claimant's subjective complaints of pain only if there are inconsistencies in the record as a whole.").

inconsistent with disabling pain.[26]  Substantial evidence supports that determination

because treating physicians identified no cause for disabling pain.  For example, the

neurologist's examination findings were normal, except for nerve conduction studies

showing pyriformis syndrome.[27]  Pyriformis syndrome provided a cause for pain in the

upper back and buttock,[28] but the neurologist determined tht Ms. Honeycutt's pain did

not warrant medication.[29]

As another example, the first pain specialist examined Ms. Honeycutt twice and

found nothing to explain her complaints.[30]  The first pain specialist offered no treatment

for the "multiplicity of symptoms."[31]  The second pain specialist had similar findings,

reporting that he could not "correlate subjective and objective findings."[32]  The second

pain specialist administered a pain block for pyriformis syndrome.[33]

---

[26]SSA record at p. 17.

[27]*Id*. at p. 337.

[28]*Id*. at p. 238 (reporting test results showing pyriformis syndrome and stating
that wold explain pain in upper back and buttocks).

[29]*Id*. at pp. 237-38.

[30]*Id*. at pp. 389-93 & 428-29.

[31]*Id*. at pp. 389 & 429.

[32]*Id*. at p. 284.

[33]*Id*. at p. 284.

These medical findings are consistent with the psychological examiner's diagnosis because "in pain disorder, the severity or duration of pain or the degree of associated disability is unexplained by observed medical or psychological problems."[34] Despite the diagnosis, the psychological examiner's opinion was consistent with the ability to work.[35]  Ms. Honeycutt's allegation of disabling pain was inconsistent with the record as a whole.  The ALJ had a sufficient basis for discounting the allegation of disabling pain.

**RFC**.  Ms. Honeycutt contends she cannot do light work on a full-time basis because she cannot stand or walk for sufficient time.  She also maintains that pain prevents her from doing light work.[36]

After evaluating the claimant's credibility, the ALJ must determine the claimant's RFC; but the claimant bears the burden of demonstrating RFC and proving disability.[37] "Because a claimant's RFC is a medical question, an ALJ's assessment of it must be

---

[34]Tanja Bekhuis & Emily Jane Willingham, 2 The Gale Encyclopedia of Mental Health 1102 (3d ed.).

[35]SSA record at 465 (reporting Ms. Honeycutt had capacity to: (1) communicate and interact in socially adequate manner, (2) communicate in intelligible and effective manner, (3) cope with mental demands of basic work tasks, (4) attend to and sustain concentration on basic tasks, (5) sustain persistence in completing tasks, and (7) complete work within acceptable time frame).

[36]Document # 14, pp. 26-27.

[37]*Perks v. Astrue*, 687 F.3d 1086, 1092 (8th Cir. 2012).

supported by some medical evidence of the claimant's ability to function in the workplace."[38] After determining RFC, the ALJ may question a vocational expert "to assess whether jobs exist for a person with the claimant's precise disabilities."[39]

The ALJ placed great weight on Ms. Honeycutt's treatment records in determining RFC.  The treatment records provided no basis for disabling pain. Radiologic imaging was normal.[40]  Neurological and musculoskeletal examinations were normal.[41]  Laboratory results were negative.[42]  This evidence supported light work.

Medical evidence of neuropathy supported the restriction on climbing, balancing, stooping, bending, kneeling, and crawling because neuropathy can cause pain.[43]  Ms. Honeycutt's doctors prescribed little pain medication.  Evidence of

---

[38]*Cox v. Astrue*, 495 F.3d 614, 619-20 (8th Cir. 2007).

[39]*Gilliam v. Califano*, 620 F.2d 691, 694 n.1 (8th Cir. 1980).

[40]SSA record at pp. 361-62 (Aug. 23, 2007, normal x-rays of lumbar spine and right hand); p. 387 (May 12, 2008, normal MRI of neck); p. 289 (June 29, 2009, normal MRI of lumbar spine except for accentuated lumbar lordotic curvature); p. 492 (Jan. 23, 2011, normal CT scan of head).

[41]*Id*. at p. 380 (Mar. 3, 2008); pp. 392-93 (May 27, 2008); pp. 396-97 (Sept. 4, 2008); pp. 222-23 (Oct. 16, 2008); pp. 428-29 (May 12, 2009); pp. 283-84 (June 26, 2009); pp. 438-39 (July 7, 2009).

[42]*Id*. at pp. 370 & 393 (negative rheumatoid factor tests and anti-nuclear antibody screens on Sept. 21, 2007 and May 27, 2008).

[43]Julia Barrett, 5 The Gale Encyclopedia of Med. 3343 (4th ed.).

depression supported the limitation on interpersonal contact, complexity of tasks, and use of judgment because depression can make it harder to work.[44]

Discoid lupus provided no basis for further reducing the range of work. Although the characteristic skin "lesions may be cosmetically unsightly, they are not life threatening and usually do not cause a patient to change … her lifestyle."[45]  Ms. Honeycutt's discoid lupus improved with treatment.[46]  Pain disorder provided no basis for further reduction because the psychological examiner's findings were consistent with the ability to work.  No medical evidence showed Ms. Honeycutt was limited in standing or walking.  "Her neuromuscular examination was essentially normal. Reflexes were good.  She was able to walk on toe and heel."[47]

After determining RFC, the ALJ questioned a vocational expert about available work.[48]  The question was properly phrased because it captured the concrete

---

[44]Paul A. Johnson , Monique Laberge & William Atkins, 1 The Gale Encyclopedia of Mental Health 449 (3d ed.).

[45]Rosalyn Carson-DeWitt, 2 The Gale Encyclopedia of Med. 1381 (4th ed.).

[46]*Compare* SSA record at p. 209 (Nov. 7. 2006, lesions gone but discoid lupus more fully revealed), *with id*. at p. 218 (Mar. 13, 2007, general improvement with topical treatment and sun screen).  *See id*. at p. 261 (May 19, 2009, one or two small lesions on nose after sun exposure).

[47]SSA record at p. 285 .

[48]*Id*. at p. 43 (asking about light work limited: (1) due mild to moderate pain by occasional balancing, stooping, bending, crouching, kneeling, and crawling; and (2) due to mood disorder by work where interpersonal contact is incidental to work performed,

consequences of Ms. Honeycutt's deficiencies.[49]  The vocational expert responded to the ALJ and identified general office worker as representative available work.[50]  A vocational expert's testimony answering a properly phrased hypothetical question constitutes substantial evidence; thus, the determination of residual functional capacity is supported by substantial evidence.[51]

**Conclusion**.  Substantial evidence supports the ALJ's decision denying Ms. Honeycutt's application.  The ALJ made no legal error.  For these reasons, the court DENIES the request for relief (docket entry # 2) and AFFIRMS the decision denying the application.

It is so ordered this 27th day of June, 2013.

_____

UNITED STATES MAGISTRATE JUDGE

---

complexity of tasks is learned and performed by rote, a few variables, little judgment, and the supervision required is simple, direct and concrete).

[49]*Perkins v. Astrue*, 648 F.3d 892, 901-02 (8th Cir. 2011) ("hypothetical question must capture the concrete consequences of the claimant's deficiencies").

[50]SSA record at p. 44.

[51]*Partee v. Astrue*, 638 F.3d 860, 865 (8th Cir. 2011).